**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th Floor
New York, NY  10019-6079
Telephone (212) 752-8000
Facsimile (212) 752-8393
Leo V. Leyva, Esq.
Jacob S. Frumkin, Esq.
Bryant Churbuck, Esq.

*Counsel for Secured Asset Management, LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CONG. BETH JOSEPH ZWI DUSHINSKY a/k/a CONGREGATION BETH JOSEPH ZWI DUSHINSKY, | Case No. 24-42127 (ESS) |
| Debtor. | |

**SECURED ASSET MANAGEMENT, LLC'S REPLY IN FURTHER SUPPORT OF**
**MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

Secured Asset Management, LLC ("SAM"), by and through its undersigned counsel,

Cole Schotz P.C., hereby submits this reply in further support of *Secured Asset Management,*

*LLC's Motion for an Order Granting Relief From the Automatic Stay* [Docket No. 50] (the

"Motion"),[1] and in response to the objection filed by the Debtor [Docket No. 57] (the

"Objection").[2]  In support of hereof, SAM respectfully represents as follows:

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[2] SAM notes that the Debtor's general bankruptcy counsel was not authorized to file the Objection on behalf of the Debtor.  On June 21, 2024, the Debtor filed the *Debtor's Application for Authorization to Retain Counsel* [Docket No. 15] (the "Application"), which sought authorization to retain and employ Shafferman & Feldman LLP ("S&F") consistent with the engagement agreement between the parties.  On June 24, 2024, the Debtor filed the *Disclosure of Compensation of Attorney for Debtor(s)* [Docket No. 23] (the "Disclosure").  The Disclosure states that S&F agreed to provide the Debtor certain legal services, but expressly excluded services

## <u>REPLY</u>

**A.    The Debtor's Argument That Service of the Motion is Deficient Should be Rejected**

1.      In the Objection, the Debtor argues that SAM failed to serve the Motion as required by the Bankruptcy Rules and therefore the Motion should be denied without prejudice. Objection ¶ 16-19.  The Debtor is wrong on both the facts and the law and this Court should overrule the Objection and reach the merits of the Motion without delay.

2.      Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") requires that all motions for relief from the automatic stay be served in accordance with Bankruptcy Rule 9014.  Fed. R. Bankr. P. 4001(a).  Bankruptcy Rule 9014, in turn, provides that service of all motions in a contested matter, like a motion for relief from the automatic stay, must be served in accordance with Bankruptcy Rule 7004 and "within the time determined under Rule 9006(d)."  *Id.* 9014(b).  Bankruptcy Rule 7004 states that service of a motion in a contested matter may be made upon parties including, *inter alia*, the debtor.  *Id.* 7004(b)(9).  Bankruptcy Rule 9006(d) provides that a motion must be served within seven days of the scheduled hearing, although this deadline is likely displaced by Rule 9006-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "<u>Local Rules</u>").  Fed. R. Bankr. P. 9006(d); 10 Collier on Bankruptcy P 9014.05 (16th 2024) (stating that the deadlines provided in Bankruptcy Rule

---

including "[r]epresentation of the debtors [sic] in any dischargeability actions, judicial lien avoidances, *relief from stay actions* or any other adversary proceeding."  Disclosure § 6 (emphasis added).  On August 19, 2024, this Court entered the *Order Authorizing Employment and Retention of Shafferman & Feldman LLP, as Bankruptcy Counsel for the Debtor* [Docket No. 44] (the "<u>Retention Order</u>").  The Retention Order authorized the retention and employment of S&F consistent with the Application, except where the Application differed from the Retention Order, in which case the Retention Order controlled.  Retention Order at 1-2.  Given the foregoing, the Debtor should have either (i) moved to employ specialty counsel for purposes of opposing the Motion or (ii) supplemented the Application and moved to amend the Retention Order to permit S&F's representation of the Debtor with respect to the Motion.  SAM takes no position at this point with respect to S&F's unauthorized representation of the Debtor with respect to the Motion, but reserves all rights to object to any fees sought by S&F with respect to same or otherwise.  *See, e.g., In re Roper & Twardowsky, LLC*, No. 16-5485, 2016 WL 7322787, at *6 (D.N.J. Dec. 14, 2016) (stating that a professional whose employment was approved by the bankruptcy court that provides unauthorized services does so "at its own risk").

2

9006(d) are frequently displaced by local rules). Local Rule 9006-1 provides that "motion papers shall be served at least 14 days before the hearing date." Local Rule 9006-1(i). In either scenario, service of the Motion was not deficient.

3.    SAM initially served the Motion by first class mail and email upon the parties listed in the *Certificate of Service* [Docket No. 51], including general bankruptcy counsel to the Debtor, on or before September 5, 2024. Upon realizing that the Debtor itself had unintentionally not been served, SAM immediately served the Debtor via overnight mail on October 14, 2024. *See* Docket No. 55. Given the foregoing, SAM properly and timely served the Debtor with the Motion (i) *before general bankruptcy counsel for the Debtor filed the Objection*[3] and (ii) thirty-one (31) days before the rescheduled hearing on November 14, 2024.[4]

4.    Even assuming, *arguendo*, that service of the Motion was somehow deficient (it was not), any deficiencies amount to harmless error and the Court should consider the Motion on the merits. Bankruptcy Rule 9005 incorporates Rule 61 of the Federal Rules of Civil Procedure (the "Civil Rules") and provides "the court may order the correction of any error or defect or the cure of any omission which does not affect substantial rights." Fed. R. Bankr. P. 9005. Civil Rule 61 states that "the court *must* disregard all errors and defects that do not affect any party's substantial rights" at every stage of a proceeding. Fed. R. Civ. P. 61 (emphasis added). "Deficiencies in the method of service are harmless error under Fed. R. Civ. P. 61 when the party asserting deficient service has actual knowledge of the action and no prejudice results from the deficiency." *Reifler v. N.C. Mut. Life Ins. Co. (In re Reifler)*, No. 18-CV-4711 (KMK), 2019

---

[3] The Objection was filed on October 16, 2024, after the parties already agreed to adjourn the hearing on the Motion from October 24, 2024 to November 14, 2024. *See* Docket No. 56.

[4] To the extent Local Rule 9006-1 does not displace the deadlines listed in Bankruptcy Rule 9006(d), SAM also properly and timely served the Motion ten (10) days prior to the originally scheduled hearing of October 24, 2024. *See* Local Rule 9006-1 (providing that Local Rule 9006-1 applies to all motions "*unless otherwise provided by these rules or the Bankruptcy Rules*") (emphasis added).

U.S. Dist. LEXIS 15719, at *10 (S.D.N.Y. Jan. 31, 2019) (quoting *St. John Rennalls v. County of Westchester*, 159 F.R.D. 418, 420 (S.D.N.Y. 1994)).  A non-movant suffers no prejudice when they have the opportunity to oppose the relief sought by the movant.  *See In re Kramer*, 492 B.R. 366, 371 (Bankr. E.D.N.Y. 2013).  The burden of demonstrating prejudice rests on the party asserting the error.  *Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir. 1992).

5.    The Debtor does not allege, much less carry its burden to prove, that deficient service resulted in any prejudice in this matter.  Nor could it.  It is uncontested that the Debtor had actual notice of the Motion.  *See* Objection ¶ 8 (acknowledging that Debtor's general bankruptcy counsel received notice of the Motion by mail).  Moreover, the Debtor was able to file its Objection to the Motion and will have an opportunity to further oppose the Motion at the November 14, 2024 hearing.  Even where a movant fails to *ever* serve a party as required by Bankruptcy Rule 9014, courts have routinely held that such error is harmless where the non-movant received actual notice of the motion and an opportunity to oppose the motion.  *See Kramer*, 492 B.R. at 371 ("[T]he Debtor had notice of the Motion through his counsel, had the opportunity to have opposition papers filed timely on his behalf, and had his counsel appear in opposition to the Motion at the April 25 Hearing; thus, the Debtor was not prejudiced by Harbor's failure to comply with Bankruptcy Rule 7004."); *Long Island Lighting Co. v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, No. 11-CV-1338 (CS), 2011 U.S. Dist. LEXIS 131621, at *36 (S.D.N.Y. Nov. 14, 2011) ("Appellants do not argue that they lacked actual notice or an opportunity to be heard, nor do they advance any other respect in which they were prejudiced by the method of service employed.").  Accordingly, the Court should reject the Debtor's unfounded and unsupported arguments on alleged service deficiencies and address the merits of the Motion without delay.

**B.**     **This Chapter 11 Case Should Be Dismissed Because it Was Commenced, and Continues to be Prosecuted, in Bad Faith**

6.     In challenging SAM's request for relief from the automatic stay, the Debtor mischaracterizes the dispute between the parties as SAM's mere frustration with delay resulting from the commencement of this Chapter 11 Case.  *See* Objection ¶ 21.  Hanging its hat on this false narrative, the Debtor cautions that "courts should dismiss on bad faith grounds sparingly, with great caution … ."  *Id.* (citing *In re G.S. Distrib., Inc.*, 331 B.R. 552, 556 (Bankr. S.D.N.Y. 2005).  The crux of the Motion, however, is the Debtor's abuse of the Bankruptcy Code and process in commencing this bankruptcy case, as nearly all *C-TC* Factors have been met.  Where, as here, the record indicates that a debtor commenced a case in bad faith, "a judge must not shrink from ordering [relief from the automatic stay]."  *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).

7.     Additionally, the Debtor has continued to abuse the Bankruptcy Code's protections since the Petition Date by using the automatic stay as a sword against SAM to both threaten to relitigate the issues decided by the District Court and force SAM to concede various rights in this case.  *See In re Briarpatch Film Corp.*, 281 B.R. 820, 835 (Bankr. S.D.N.Y. 2002) ("[I]t is bad faith to file a Chapter 11 petition simply in order to relitigate a matter determined by another court."); *see also In re HBA E., Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988) ("[W]here, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.").  Given the numerous infirmities in the commencement and prosecution of this Chapter 11 Case, this Court should grant the Motion.

8.     When a party seeks relief from the automatic stay, it bears the initial burden of showing that "cause" exists to modify the automatic stay.  *Id.* at 756.  But when the movant

makes a *prima facie* case that "cause" exists, the evidentiary and persuasive burden shifts to the debtor to show that the relief requested should not be granted. *Id.* (citing *In re Certified Mort. Corp.*, 20 B.R. 787, 788 (Bankr M.D. Fla. 1982)). As detailed extensively in the Motion, SAM has made a *prima facia* case for relief from the automatic stay. Motion ¶¶ 28-38. And the Objection does not set forth any legitimate reasons for maintaining the stay or denying the Motion.

9.      All parties agree that the Second Circuit's opinion in *C-TC 9th Ave. Partnership v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304 (2d Cir. 1997), setting forth the factors for whether a case was filed in bad faith (the "C-TC Factors"), applies here. *See* Motion ¶ 33; Objection ¶ 24. The C-TC Factors include: include whether: (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees. *Id.* (citing *Pleasant Pointe Apartments., Ltd. v. Kentucky Housing Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992)).

10.      In the Objection, the Debtor contends that, at best, only two of the C-TC Factors are present in this case. Objection ¶¶ 26-35. However, a close examination of the Debtor's arguments and the record in this case indicates that the Debtor's arguments (other than its

concessions) either are (i) unsubstantiated and conclusory[5] or (ii) intentionally misleading.  To the contrary, each C-TC Factor weighs in favor of granting the Motion.  Accordingly, the Debtor fails to carry its evidentiary and persuasive burden.  Taking the factors in turn:

a.    <u>Whether the Debtor has only one asset</u>: The Debtor argues that because it has certain miscellaneous assets, including furniture, this factor does not favor a finding of bad faith.  Objection ¶ 26.  Under the Debtor's hyper literal reading of this factor, a single chair in an otherwise empty warehouse would transform a case from a single asset case to a multi asset case.  Courts in this circuit have rejected this narrow reading and instead have looked to whether a debtor has more than one *material* asset.  *See In re Syndicom Corp.*, 268 B.R. 26, 48 (Bankr. S.D.N.Y. 2001) (stating that "other than some flotsam and jetsam furniture and fixtures," debtor's only asset was its interest in an apartment unit, and that this factor, along with all other C-TC Factors, favored a finding of bad faith).  Here, the Debtor's only *material* asset is the Property,[6] which supports a finding of bad faith.

---

[5] The Objection fails to include an affidavit, a declaration, exhibits, or any other evidence of any kind to support the Debtor's factual assertions.  This is a familiar pattern given the Welz Declaration, the only non-status report document filed by the Debtor regarding its alleged restructuring efforts, is also bare of any evidentiary support for the factual assertions contained therein.  *See* Docket No. 47.

[6] The Debtor claims, without *any* evidence, that the value of the Property is approximately $5,500,000.  Objection ¶ 32.  On August 26, 2024, SAM served the Debtor with *Secured Asset Management, LLC's First Request for the Production of Documents* (the "<u>Document Requests</u>") in order to investigate, *inter alia*, the value of the Debtor's assets, the Debtor's financial condition, and the validity of the various claims scheduled by the Debtor.  Attached hereto as **<u>Exhibit 1</u>** is a true and correct copy of the Document Requests.  More specifically, SAM requested the production of documents related to the value of the Property and any appraisals performed on the Property.  Document Requests ¶¶ 1-4.  To date, the Debtor has failed to provide SAM with **any** of the requested documents.  Even assuming the Debtor's baseless contentions regarding the value of the Property are correct, its remaining property is worth only approximately $170,000.  *See* Docket No. 19.  Accordingly, the only material asset the Debtor owns is the Property.  SAM reserves all its rights with respect to the Debtor's failure to comply with the Document Requests.

b.      Whether the Debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors:  The Debtor argues that there are ten (10) unsecured creditors in this case with claims totaling $172,534.55 and that "it is not clear whether the aggregate amount of such claims is relatively small compared to the amount of SAM's secured claim."  Objection ¶ 27.  As an initial matter, SAM suspects that the purported claims held by the congregation members are illusory.  SAM's efforts to investigate the legitimacy of the congregation members' claims, however, have been repeatedly stymied by the Debtor, which has refused to comply with the Document Requests.[7]  Even assuming the congregation members' claims are legitimate, however, this factor still favors a finding of bad faith because general unsecured claims total, at best, approximately 9% of the Debtor's total debts.  Courts have held that a similar percentage of general unsecured debt supports a finding of bad faith.  *Syndicom*, 268 B.R. at 51 ("Other than [movant] (who welcomes, and seeks, relief from the stay or dismissal), the Debtor has only two or three creditors who are not either insiders or the Debtor's lawyers. They represent less than 8% of the Debtor's stated total claims. There certainly is not a significant creditor body to protect.").

c.      Whether the Debtor's one asset is subject of a foreclosure action as a result of arrearages or default on the debt:  The Debtor repeats its argument that it has more than one asset and thus this factor is absent.  Objection ¶ 28.  As noted above, this factor looks at whether a debtor has more than one *material* asset.  The Property is the Debtor's only material asset and the Debtor has lost the District

---

[7] *See* Document Requests ¶¶18-19.

Court case on the merits and both the Summary Judgment Opinion and Foreclosure Order are non-appealable. This factor supports a finding of bad faith.

d.  <u>Whether the Debtor's financial condition is, in essence, a two party dispute between the Debtor and secured creditors which can be resolved in the pending state foreclosure action</u>: The Debtor argues that due to the presence of ten (10) other (purported) creditors, this factor does not favor a finding of bad faith. Objection ¶ 29. Once again, this argument is intentionally misleading. The record in this case shows that the Debtor's financial difficulties almost entirely relate to the dispute between the Debtor and SAM. On substantially similar facts, this Court found that a debtor commenced a case in bad faith. *See In re Hartford & York LLC*, No. 13-45563-ess, 2014 Bankr. LEXIS 997, at *14 (Bankr. E.D.N.Y. Mar. 13, 2014) ("The record shows that the Debtor's financial difficulties relate principally to a dispute between the Debtor and Stabilis arising from the Debtor's default on the mortgage. … This is, in essence, a foreclosure dispute between the Debtor and Stabilis."). This factor supports a finding of bad faith.

e.  <u>Whether the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights</u>: The Debtor admits that it commenced this case in an effort to frustrate SAM's rights under applicable law as adjudicated by the District Court and decreed in the Summary Judgment Opinion and Foreclosure Order. Objection ¶ 30. This factor supports a finding of bad faith.

9

f.    <u>Whether the Debtor has little to no cash flow</u>: The Debtor argues that its cash flow has increased since the commencement of this Chapter 11 Case and therefore this factor does not favor a finding of bad faith.  Objection ¶ 31.  This is intentionally misleading.  As an initial matter, the Debtor had no cash flow for the months of May, June, and September.  *See* Docket Nos. 40, 41, 54.  For the months of July and August, the Debtor had *de minimis* cash flow totaling $5,819.13.  *See* Docket Nos. 52, 53.  Taken together, the Debtor has generated almost no cash flow throughout the entirety of this case, with cash flow decreasing to zero in the most recent monthly operating report.  *See* Docket No. 54.  Moreover, the Debtor's net cash flow is bolstered by its ongoing refusal to pay the secured debts owed to SAM, including adequate protection payments.  *See In re Valid Value Props., LLC*, No. 16-13299, 2017 Bankr. LEXIS 27, at *22 (Bankr. S.D.N.Y. Jan. 5, 2017) ("The Debtor appears to have little or no cash flow based on the refusal to pay taxes and *remain current on obligations owed to its secured creditor*.") (emphasis added).  The Debtor attempts to sidestep these obvious deficiencies by stating that it "expects its income stream to continue to grow" and listing various sources of future funding.  Objection ¶¶ 31-33.  But the Debtor provides no evidence of any kind to substantiate its contentions.  Given the evidence in the record, this factor supports a finding of bad faith.

g.    <u>Whether the Debtor can't meet current expenses including the payment of personal property and real estate taxes</u>: The Debtor argues that this factor does not support a finding of bad faith because no proofs of claim by governmental units have been filed on the claims register.  Objection ¶ 34.  As noted in the Motion,

10

SAM does not *presently* have any insight as to whether the debtor is meeting its current expenses.  Motion ¶ 35.  However, SAM notes that, per the Bar Date Order, the deadline for government units to file proofs of claim for pre-petition amounts owed is November 18, 2024.  *See* Docket No. 27.  This factor is therefore neutral.

h.    <u>Whether the Debtor has no employees</u>: The Debtor admits it has no employees. Objection ¶ 35.  This factor supports a finding of bad faith.

11.    Where, as here, the evidence in the record overwhelmingly indicates that a case was commenced in bad faith, modifying the automatic stay to pursue all available remedies is appropriate.  *Syndicom*, 268 B.R. at 51-52.

12.    The Debtor fares no better with its arguments regarding the Plan.  As an initial matter, it provides no evidence to substantiate the purported sources of revenue to make the Plan feasible.  Objection ¶ 33.[8]  But the more fundamental problem is that *no plan of reorganization is confirmable* due to the Debtor's bad faith commencement of this case.  Courts in this circuit have recognized that the "taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement."  *In re 652 W. 160th LLC*, 330 B.R. 455, 468 (Bankr. S.D.N.Y. 2005) (quoting *In re Natural Land Corp.*, 825 F.2d 296, 297-98 (11th Cir. 1987); *see also In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988) ("The possibility of a successful reorganization cannot transform a bad faith filing into one

---

[8] The Debtor represented that it would file motions to approve any new leases for portions of the Property, such as those mentioned in the Objection.  *See* Docket No. 46 ("The undersigned, with the assistance [sic] Welz will prepare any motion necessary to approve new leases for the Debtor's [sic] and to move the Plan forward to confirmation.").  Despite seventy-seven (77) days passing, the Debtor has not followed through on this representation.

undertaken in good faith."). There is therefore no reason to further delay the exercise of SAM's rights under the Note, the Mortgage, and the Foreclosure Order. And the confirmability (or lack thereof) of the Plan is a sideshow not currently before the Court.

13. Finally, while the C-TC Factors indicate that this Chapter 11 Case was *commenced* in bad faith, the facts also overwhelmingly indicate that the Debtor has *prosecuted* this case in bad faith, further justifying relief from the automatic stay. Since the Petition Date, the Debtor has abused the protections of the Bankruptcy Code by taking the following actions: (i) using SAM's cash collateral without seeking, much less obtaining, authorization by this Court to do so; (ii) refusing to make adequate protection payments to SAM; (iii) collaterally attacking SAM's secured claim (and encouraging others to do so); (iv) refusing to engage in good faith discovery; and (v) routinely failing to timely comply with its obligations to file monthly operating reports in an effort to avoid scrutiny of its operations.[9] *See, e.g.*, Motion ¶ 36. In short, the record is clear that the Debtor commenced this Chapter 11 Case as a mere litigation tactic in order to "shift the forum of their disputes with Movants to this Court, a forum they believed might be more favorable to their plight." *HBA E., Inc.*, 87 B.R. at 260. As the automatic stay is not meant to be utilized as a sword to frustrate the legitimate rights of creditors and browbeat them into submission, this Court should grant the Motion and modify the automatic stay so SAM can exercise its rights under the Note, the Mortgage, and the Foreclosure Order. *Id.*

*[Remainder of Page Intentionally Left Blank]*

---

[9] As of the filing date of the Motion, the Debtor had only filed its monthly operating reports for the months of May and June and did so late. *See* Docket Nos. 40, 41. On October 14, 2024, the Debtor filed monthly operating reports for the months of July, August, and September. *See* Docket Nos. 52-54. Only the monthly operating report for September was filed timely.

## CONCLUSION

WHEREFORE, SAM respectfully requests that the Court: (i) grant the Motion; (ii) overrule the Objection; (iii) enter the Proposed Order attached to the Motion as **Exhibit A**; and (iv) grant SAM such other and further relief as the Court deems just and proper.

**COLE SCHOTZ P.C.**

Dated: November 7, 2024
     New York, New York

By:   */s/ Jacob S. Frumkin*
     Leo V. Leyva, Esq.
     Jacob S. Frumkin, Esq.
     Bryant Churbuck, Esq.
     Telephone: (646) 563-8930
     Facsimile: (646) 563-7930
     Email:  lleyva@coleschotz.com
           jfrumkin@coleschotz.com
           bchurbuck@coleschotz.com

*Counsel for Secured Asset Management, LLC*

# **EXHIBIT 1**

## **DOCUMENT REQUESTS**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re:

CONG. BETH JOSEPH ZWI DUSHINSKY *AKA*
CONGREGATION BETH JOSEPH ZWI
DUSHINSKY,

          Debtor.

Chapter 11

Case No. 24-42127-ESS

**SECURED ASSET MANAGEMENT, LLC'S FIRST REQUEST**
**FOR THE PRODUCTION OF DOCUMENTS TO THE DEBTOR**

TO:    Joel Shafferman, Esq.
       Shafferman & Feldman LLP
       137 Fifth Avenue, 9th Floor
       New York, New York 10010

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 34 of the Federal Rules of
Civil Procedure (the "Civil Rules"), made applicable by Rules 9014, 7026 and 7034 of the
Federal Rules of Bankruptcy Procedure, the undersigned, Cole Schotz P.C., attorneys for
Secured Asset Management, LLC ("SAM"), hereby demands that, **on or before September 23,**
**2024**, the above captioned debtor and debtor in possession (the "Debtor") respond in writing to
these requests (including returning the certification annexed hereto) and produce and permit
SAM to inspect, copy and/or photograph all documents and things in the possession, custody, or
control of the Debtor or any agent of the Debtor, which embody, refer to, or relate, in any way to
the subjects listed below.

Dated:  New York, New York
       August 26, 2024

COLE SCHOTZ P.C.

By: _/s/ Jacob S Frumkin_____
Leo V. Leyva, Esq.
Jacob S. Frumkin, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York  10019
(212) 752-8000 (Phone)
(212) 752-8393 (Fax)
*Counsel for Secured Asset Management, LLC*

52577/0002-48363447v1

**DEFINITIONS**

1.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure (the "Civil Rules"), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, electronically stored information, images, and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

2.      As used herein, the terms "communicate" or "communication" means any oral, written, audio/digitally recorded, voice recorded, or electronic transmission of information, including meetings, discussions, conversations, telephone calls, electronic mail messages, memoranda, letters, analyst reports, telecopies, facsimiles, conferences, text messages, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, digital/audio recordings, voicemail recordings, or other media of any kind.  Responsive emails shall be produced whether they are from debtor-owned or –controlled domains or from personal email accounts.

3.      The terms "relating to" or "concerning" mean referring to, concerning, describing, evidencing, constituting, embodying, considering, mentioning, respecting, bearing on, referring to or addressed in whole or in part to that subject.

4.      "Representative" means and shall include each and every present and former director, officers, employee, agent, professionals (including, but not limited to, attorneys), or other person acting or purporting to act on behalf of any entity (including, but not limited to, a partnership, corporation, etc.) or any predecessor, subsidiary, affiliates, agent, division or department thereof.

5.      "Identify" or "identity," as used herein with reference to (i) a Document, shall mean to state its title or other form of identification, its date, its author and, if different, its signer or signers, their addresses, the persons to whom it was directed (including "cc" and "bcc" recipients), the type of Document (e.g., letter, memorandum, chart, etc.), and its principal topics. If such Document is no longer in Your possession or custody or subject to Your control, state what disposition (if any) was made of it, and identify all persons having current possession, custody, or control; (ii) an individual shall mean to set forth his or her name, home address, home telephone number, whether employed, and if so, the name, address, and telephone number of his or her employer; (iii) a corporation or other non-human entity shall mean to set forth its legal name, principal place of business, business address and business telephone number; and (iv) a Communication, shall mean to set forth the form of Communication (e.g., telephone conversation, in-person conversation, written correspondence, facsimile, etc.), the persons or entities who took part in the communication, the date, time and place of the Communication, and any other persons present during the Communication.

6.      The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

7.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

8.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.      The use of the singular form of any word includes the plural and vice versa.

4

10.     "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York.

11.     "Cash Collateral Stipulation" means the proposed *Stipulated Order Authorizing Debtor to Use Cash Collateral Pursuant to Section 363 of the United States Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001*, circulated to SAM by the Debtor on August 16, 2024.

12.     "Chapter 11 Case" means the chapter 11 case filed by Debtor and currently pending under Case No. 24-42127-ESS in the Bankruptcy Court.

13.     "Debtor" means Cong. Beth Joseph Zwi Dushinsky *aka* Congregation Beth Joseph Zwi Dushinsky.

14.     "Declaration" means the *Declaration of Theodore Welz with Regard to Cash Collateral Stipulation and Means to Implement Plan*, filed with the Bankruptcy Court on August 22, 2024 under Docket No. 45.

15.     "Plan" means the *Small Business Sub-Chapter V Plan of* Reorganization, filed with the Bankruptcy Court on August 19, 2024 under Docket No. 42, together with all amendments, modifications, and supplements thereto.

16.     "Plan Documents" means any document that has been or will be filed with the Bankruptcy Court in connection with the Plan, including but not limited to any plan supplements or exhibits to the Plan.

17.     "Property" means that certain real property located at 135 Ross Street, Brooklyn, New York 11211.

18.     "Status Conference" means the conference scheduled by the Bankruptcy Court in this Chapter 11 Case for August 29, 2024 at 10:30 a.m.

19.     "You" or "Your" means the Debtor.

## **INSTRUCTIONS**

1.      Pursuant to Civil Rule 34(a)(1), each production request shall be construed to include all documents within Your possession, custody or control.

2.      Electronically stored information is to be produced in native format, unless otherwise agreed between counsel or unless such information could not be retrieved or accessed with the use of commonly used commercial off-the-shelf software, in which event counsel is requested to contact the undersigned to discuss the form of production. In addition, it is requested that all electronically stored information be produced as .TIFF images with Relativity load files (.DAT and .OPT) and searchable text (*i.e.*, OCR).

3.      If the response to any production request consists, in whole or in part, of an objection on the basis of or including burdensomeness, then provide those documents that can be produced without undue burden. For such documents that are too burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

4.      Pursuant to Civil Rule 26(b)(5)(A) and L. Civ. R. 26.2, if You assert a claim of privilege in responding or objecting to any production request, You must identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. If You withhold otherwise discoverable documents by claiming that the documents are privileged, You must describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

5.      If Your response to any document request is any other objection, provide all information not covered by the objection and state the basis of the objection.

6.      If any document responsive to these production requests has been destroyed, state when the document was destroyed, identify the person who destroyed the document, and the person who directed that it be destroyed. Additionally, detail the reasons for the destruction, describe the nature of the document, identify the persons who created, sent, received, or reviewed the document, and state in as much detail as possible the contents of the document.

7.      Pursuant to Civil Rule 26(e)(1), You must supplement or correct Your responses to these requests in a timely manner if You learn that in some material respect the disclosure or response is incomplete or incorrect.

### REQUESTS FOR PRODUCTION[1]

1.      All documents supporting the statement in Footnote 1 of the Declaration that "the value of the Debtor's real property is much greater than the amount of SAM's claim."

2.      All documents and communications supporting the statement in Footnote 1 of the Declaration that there is an "equity cushion."

3.      All documents and communications regarding attempts by the Debtor or its Representatives to hire an appraiser or obtain an appraisal for the Property.

4.      All documents indicating any type of appraisal or valuation of the Property, whether in draft form or otherwise.

5.      The source of the adequate protection payments proposed to be made to SAM, as described Paragraph 2 of the Declaration.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

6.      All documents evidencing the Debtor's ability to make continued adequate protection payments.

7.      A list of historical rental payments to the Debtor or any other party for residential units at the Property for the last 10 years, and documents and communications showing the use of such funds.

8.      The names and financial information related to the historical and current tenants, and the tenants that have been living rent free.

9.      A list of historical rental payments to the Debtor or any other party by any sub-congregation relating to the Property for the last 10 years, and documents and communications showing the use of such funds.

10.     A list of all donations made by congregants to the Debtor for the last 10 years, and documents and communications showing the use of such funds.

11.     All documents and communications relating to the Debtor's financial ability to satisfy the "sources of income" described in Paragraph 5 of the Declaration.

12.     All documents and communications related to the Plan.

13.     All documents and communications related to any liquidation analyses, financial projections, or feasibility analyses with respect to the Plan or the Plan Documents.

14.     All documents and communications related to Your efforts to obtain funding for the Plan or the Cash Collateral Stipulation from sources other than as described in Paragraphs 2 and 5 of the Declaration.

15.     All documents and communications related to the projected recoveries for each class of claims or interests identified in the Plan.

52577/0002-48363447v1

16.     All documents and communications related to the calculation of the interest rate described in the treatment for Class 3 of the Plan.

17.     All documents and communications, including but not related to formulas, related to the payment terms proposed for Class 3 in Article VIII of the Plan, including the payment schedule, interest rate, and present value of such payments.

18.     All documents and communications supporting the alleged legal basis, if any, for separately classifying general unsecured claims and "Congregant/Investor Claims" in the Plan.

19.     All documents and communications underlying the alleged "money loaned" for each of these "Congregant/Investor Claims" described in the Plan.

20.     All documents and communications evidencing the feasibility of the Plan.

21.     All documents and communications regarding Exhibit A to the Plan.

22.     All documents and communications between or among the Debtor or its Representatives and the "group of congregants and creditors" described in Paragraph 3 of the Declaration.

23.     All documents that You intend to rely upon in connection with the Status Conference or the Confirmation Hearing.

24.     The names of all witnesses You intend to call at the Confirmation Hearing.

25.     Copies of reports and documents received from or provided by or to any expert You have retained, intend to retain, or contemplated retaining in connection with the Chapter 11 Case, including (a) all expert reports and draft reports, (b) the curriculum vitae of any expert, (c) summaries of any oral opinions provided the expert(s), including initial or preliminary opinions, and (d) a listing of all articles, books, publications or other writings authored or co-authored by the expert(s).

## **CERTIFICATION**

I hereby certify that a reasonable inquiry has been made for documents responsive to this request and that as a result of that injury, to the best of my knowledge and information, this response is complete and correct.


By:_____

Print Name:_____

DATED:  _____, 20\_\_

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served by email on counsel for the Debtor.


August 26, 2024                                              */s/ Jacob S. Frumkin*